# Exhibit A

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF BERRIEN

AIDEN WILLIAMS, a Minor,
By His Next Friend and Mother,
AMANDA WILLIAMS

Plaintiff,

vs.

Case No. 17- NH
Hon.

LAKELAND REGIONAL HEALTH SYSTEM, a Domestic Nonprofit Corporation; LAKELAND REGIONAL MEDICAL CENTER, an assumed name of LAKELAND HOSPITAL at NILES and ST. JOSEPH, INC.; LAKELAND MEDICAL PRACTICES; INTERCARE COMMUNITY HEALTH NETWORK; TRACY M. ANDERSON, C.N.M.; MELISSA HOLDERREAD, C.N.M.; JOHN L. BARD, M.D.; and DESIRE M. HURST-ANDERSON, M.D. INDIVIDUALLY, JOINTLY & SEVERALLY

Defendants.

---

JESSE M. REITER (P40692)
EUEL W. KINSEY (P36690)
ELIZABETH M. SPIRIDON (P80715)
Attorneys for Plaintiff
Reiter & Walsh, P.C.
122 Concord Road
Bloomfield Hills, MI 48304
(248) 593-5100

---

**THERE IS NO OTHER PENDING OR RESOLVED CIVIL ACTION ARISING OUT OF THE TRANSACTION OR OCCURRENCE ALLEGED IN THE COMPLAINT.**

**JESSE M. REITER (P40692)**
**EUEL W. KINSEY (P36690)**
**ELIZABETH M. SPIRIDON (P80715)**

## COMPLAINT AND JURY DEMAND

NOW COMES the above-named Plaintiff, by and through his attorneys, **REITER & WALSH, P.C.**, and hereby submits Plaintiff's Complaint and Jury Demand and states unto this Honorable Court as follows:

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

1. That Plaintiff, **AIDEN WILLIAMS**, is a resident of the City of Benton Harbor, County of Berrien, State of Michigan.

2. That **AMANDA WILLIAMS**, as Next Friend of **AIDEN WILLIAMS**, is a resident of the City of Benton Harbor, County of Berrien, State of Michigan.

3. That at all times hereinafter mentioned, the Defendants, **TRACY M. ANDERSON, C.N.M. and MELISSA HOLDERREAD, C.N.M.**, were engaged in the practice of their profession in the City of St. Joseph and/or the City of Benton Harbor, County of Berrien, State of Michigan, and were and are duly licensed to practice nursing in the County of Berrien, State of Michigan, holding themselves out to the public, and to **AIDEN WILLIAMS**, and **AMANDA WILLIAMS** as Next Friend of **AIDEN WILLIAMS**, in particular, as possessing an ability to exercise that degree of skill, knowledge, and ability generally possessed by others in the same profession, and further held themselves out as skilled and competent nurse midwives capable of properly and skillfully treating, caring for, and curing individuals seeking their services.

4. That at all times hereinafter mentioned, the Defendant, **JOHN L. BARD, M.D.**, was engaged in the practice of his profession in the City of St. Joseph and/or City of Benton Harbor, County of Berrien, State of Michigan, and was and is duly licensed to practice medicine in the County of Berrien, State of Michigan, holding himself out to the public, and to **AIDEN WILLIAMS**, and **AMANDA WILLIAMS** as Next Friend of **AIDEN WILLIAMS**, in particular, as possessing an ability to exercise that degree of skill, knowledge, and ability generally possessed by others in the same profession, and further held himself out as a skilled and competent doctor capable of properly and

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

skillfully treating, caring for, and curing individuals seeking their services, with specialized skills in the area of Obstetrics and Gynecology.

5. That at all times hereinafter mentioned, the Defendants, **LABOR AND DELIVERY NURSES AT LAKELAND REGIONAL HEALTH SYSTEM, LAKELAND REGIONAL MEDICAL CENTER, and LAKELAND MEDICAL PRACTICES, including, but not limited to, HALEY SULLIVAN, R.N., CARMEN ESCOTTO, R.N., EVELYN OSEI, R.N., MARIA MCDONNELL, R.N., MARIKO MARTIN, R.N., and HANNAH LASOTA, R.N.,** were engaged in the practice of their profession in the City of St. Joseph, County of Berrien, State of Michigan, and were and are duly licensed to practice nursing in the County of Berrien, State of Michigan, holding themselves out to the public, and to **AIDEN WILLIAMS**, and **AMANDA WILLIAMS** as Next Friend of **AIDEN WILLIAMS**, in particular, as possessing an ability to exercise that degree of skill, knowledge, and ability generally possessed by others in the same profession, and further held themselves out as skilled and competent nurses capable of properly and skillfully treating, caring for, and curing individuals seeking their services.

6. That at all times hereinafter mentioned, the Defendants, **NURSERY/SPECIAL CARE NURSERY NURSES AT LAKELAND REGIONAL HEALTH SYSTEM, LAKELAND REGIONAL MEDICAL CENTER, and LAKELAND MEDICAL PRACTICES, including, but not limited to, STACEY LIN, R.N., JENNIFER L. SOPER, R.N., GAIL KRAUSE, R.N., J. MARTINEZ, and JOHN W. GRITTER, R.N.**, were engaged in the practice of their profession in the City of Benton Harbor, County of St. Joseph, State of Michigan, and were and are duly licensed to practice nursing in the County of Berrien, State of Michigan, holding

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

themselves out to the public, and to **AIDEN WILLIAMS**, and **AMANDA WILLIAMS** as Next Friend of **AIDEN WILLIAMS**, in particular, as possessing an ability to exercise that degree of skill, knowledge, and ability generally possessed by others in the same profession, and further held themselves out as skilled and competent nurses capable of properly and skillfully treating, caring for, and curing individuals seeking their services.

7. That at all times hereinafter mentioned, the Defendants, **RESPIRATORY CARE TEAM AT LAKELAND REGIONAL HEALTH SYSTEM, LAKELAND REGIONAL MEDICAL CENTER, and LAKELAND MEDICAL PRACTICES, including, but not limited to, DAWN BURTON, R.R.T., JANNA RIDGEL, R.R.T., J. MARTINEZ, and VICKY DIXON, R.R.T.**, were engaged in the practice of their profession in the City of St. Jospeh, County of Berrien, State of Michigan, and were and are duly licensed to practice respiratory therapy in the County of Berrien, State of Michigan, holding themselves out to the public, and to **AIDEN WILLIAMS**, and **AMANDA WILLIAMS** as Next Friend of **AIDEN WILLIAMS**, in particular, as possessing an ability to exercise that degree of skill, knowledge, and ability generally possessed by others in the same profession, and further held themselves out as skilled and competent respiratory therapists capable of properly and skillfully treating, caring for, and curing individuals seeking their services.

8. That at all times hereinafter mentioned, the Defendant, **DESIRE M. HURST-ANDERSON, M.D.**, was engaged in the practice of her profession in the City of Benton Harbor, County of St. Joseph, State of Michigan, and was and is duly licensed to practice medicine in the County of Berrien, State of Michigan, holding herself out to the public, and to **AIDEN WILLIAMS**, and **AMANDA WILLIAMS** as Next Friend of

**AIDEN WILLIAMS**, in particular, as possessing an ability to exercise that degree of skill, knowledge, and ability generally possessed by others in the same profession, and further held herself out as a skilled and competent doctor capable of properly and skillfully treating, caring for, and curing individuals seeking their services, with specialized skills in the area of Pediatrics.

9. That the Defendants, **LAKELAND REGIONAL HEALTH SYSTEM, a Domestic Nonprofit Corporation; LAKELAND REGIONAL MEDICAL CENTER, an assumed name of LAKELAND HOSPITAL at NILES and ST. JOSEPH, INC.; LAKELAND MEDICAL PRACTICES; and INTERCARE COMMUNITY HEALTH NETWORK** are duly organized and existing under and by virtue of the laws of the State of Michigan, with their principal places of business in the County of Berrien, State of Michigan.

10. That at all times pertinent hereto, the Defendants, **TRACY M. ANDERSON, C.N.M., MELISSA HOLDERREAD, C.N.M., JOHN L. BARD, M.D., and DESIRE M. HURST-ANDERSON, M.D.**, were the apparent, ostensible, implied, and/or express agents, and/or were employed by the Defendants, **LAKELAND REGIONAL HEALTH SYSTEM, a Domestic Nonprofit Corporation; LAKELAND REGIONAL MEDICAL CENTER, an assumed name of LAKELAND HOSPITAL at NILES and ST. JOSEPH, INC.; LAKELAND MEDICAL PRACTICES; and INTERCARE COMMUNITY HEALTH NETWORK** and were acting in the course and scope of said employment and/or agency when the acts of negligence and malpractice, hereinafter set forth and described, were committed, thereby imposing vicarious liability upon the Defendants, **LAKELAND REGIONAL HEALTH**

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

**SYSTEM**, a **Domestic Nonprofit Corporation; LAKELAND REGIONAL MEDICAL CENTER, an assumed name of LAKELAND HOSPITAL at NILES and ST. JOSEPH, INC.; LAKELAND MEDICAL PRACTICES; and INTERCARE COMMUNITY HEALTH NETWORK** by reason of the doctrine of respondeat superior.

11. That at all times pertinent hereto, the Defendants, **LABOR AND DELIVERY NURSES AT LAKELAND REGIONAL HEALTH SYSTEM, LAKELAND REGIONAL MEDICAL CENTER, and LAKELAND MEDICAL PRACTICES, including, but not limited to, HALEY SULLIVAN, R.N., CARMEN ESCOTTO, R.N., EVELYN OSEI, R.N., MARIA MCDONNELL, R.N., MARIKO MARTIN, R.N., and HANNAH LASOTA, R.N.; NURSERY/SPECIAL CARE NURSERY NURSES AT LAKELAND REGIONAL HEALTH SYSTEM, LAKELAND REGIONAL MEDICAL CENTER, and LAKELAND MEDICAL PRACTICES including, but not limited to, STACEY LIN, R.N., JENNIFER L. SOPER, R.N., GAIL KRAUSE, R.N., J. MARTINEZ, and JOHN W. GRITTER, R.N.; RESPITORY CARE TEAM AT LAKELAND REGIONAL HEALTH SYSTEM, LAKELAND REGIONAL MEDICAL CENTER, and LAKELAND MEDICAL PRACTICES including, but not limited to, DAWN BURTON, R.R.T., JANNA RIDGEL, R.R.T., J. MARTINEZ, and VICKY DIXON, R.R.T.**, were the apparent, ostensible, implied, and/or express agents, and/or were employed by the Defendants, **LAKELAND REGIONAL HEALTH SYSTEM, a Domestic Nonprofit Corporation, and LAKELAND REGIONAL MEDICAL CENTER, an assumed name of LAKELAND HOSPITAL at NILES and ST. JOSEPH, INC.; and**

**LAKELAND MEDICAL PRACTICES** and were acting in the course and scope of said employment and/or agency when the acts of negligence and malpractice, hereinafter set forth and described, were committed, thereby imposing vicarious liability upon the Defendants, **LAKELAND REGIONAL HEALTH SYSTEM, a Domestic Nonprofit Corporation, and LAKELAND REGIONAL MEDICAL CENTER, an assumed name of LAKELAND HOSPITAL at NILES and ST. JOSEPH, INC.; and LAKELAND MEDICAL PRACTICES** by reason of the doctrine of respondeat superior.

12. That at all times pertinent hereto, the Defendants, **TRACY M. ANDERSON, C.N.M., MELISSA HOLDERREAD, C.N.M., JOHN L. BARD, M.D., LABOR AND DELIVERY NURSES AT LAKELAND REGIONAL MEDICAL CENTER, including, but not limited to, HALEY SULLIVAN, R.N., CARMEN ESCOTTO, R.N., EVELYN OSEI, R.N., MARIA MCDONNELL, R.N., MARIKO MARTIN, R.N., and HANNAH LASOTA, R.N.; NURSERY/SPECIAL CARE NURSERY NURSES AT LAKELAND REGIONAL MEDICAL CENTER, including, but not limited to, STACEY LIN, R.N., JENNIFER L. SOPER, R.N., GAIL KRAUSE, R.N., J. MARTINEZ, and JOHN W. GRITTER, R.N.; RESPITORY CARE TEAM AT LAKELAND REGIONAL MEDICAL CENTER, including, but not limited to, DAWN BURTON, R.R.T., JANNA RIDGEL, R.R.T., and VICKY DIXON, R.R.T., and DESIRE M. HURST-ANDERSON, M.D.,** expressly and/or impliedly held out to the public, and to **AIDEN WILLIAMS**, and **AMANDA WILLIAMS** as Next Friend of **AIDEN WILLIAMS**, in particular, as agents, servants, and/or employees of the Defendants, **LAKELAND REGIONAL**

**REITER & WALSH, P.C.**
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

**HEALTH SYSTEM, a Domestic Nonprofit Corporation; and LAKELAND REGIONAL MEDICAL CENTER, an assumed name of LAKELAND HOSPITAL at NILES and ST. JOSEPH, INC.; and LAKELAND MEDICAL PRACTICES.**

13. That at all times pertinent hereto, the Defendants, **TRACY M. ANDERSON, C.N.M., MELISSA HOLDERREAD, C.N.M., and JOHN L. BARD, M.D.**, expressly and/or impliedly held out to the public, and to **AIDEN WILLIAMS**, and **AMANDA WILLIAMS** as Next Friend of **AIDEN WILLIAMS**, in particular, as agents, servants, and/or employees of the Defendants **INTERCARE COMMUNITY HEALTH NETWORK**.

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

14. That as such, the Defendants, **LAKELAND REGIONAL HEALTH SYSTEM, a Domestic Nonprofit Corporation; LAKELAND REGIONAL MEDICAL CENTER, an assumed name of LAKELAND HOSPITAL at NILES and ST. JOSEPH, INC.; LAKELAND MEDICAL PRACTICES; and INTERCARE COMMUNITY HEALTH NETWORK** are liable and responsible for all acts and/or omissions to act by the individual doctors.

15. That at all times hereinafter mentioned Defendants, **LAKELAND REGIONAL HEALTH SYSTEM, a Domestic Nonprofit Corporation; LAKELAND REGIONAL MEDICAL CENTER, an assumed name of LAKELAND HOSPITAL at NILES and ST. JOSEPH, INC.; LAKELAND MEDICAL PRACTICES; and INTERCARE COMMUNITY HEALTH NETWORK** had represented and held out to the public and to **AMANDA WILLIAMS** as Next Friend of **AIDEN WILIAMS,** and Plaintiff **AIDEN WILLIAMS**, that said Defendants were equipped, qualified and prepared to receive and treat the public, and in particular **AMANDA WILLIAMS** as

Next Friend of **AIDEN WILLIAMS**, and Plaintiff **AIDEN WILLIAMS**, for treatment and care, and that they employed and maintained on their staffs, competent, qualified, and licensed staff of physicians, surgeons, technicians, residents, interns, nurses, and in general, competent help otherwise in the conduct and operation of said corporations.

16. That at all times hereinbefore and hereinafter mentioned Defendants, **LAKELAND REGIONAL HEALTH SYSTEM, a Domestic Nonprofit Corporation; LAKELAND REGIONAL MEDICAL CENTER, an assumed name of LAKELAND HOSPITAL at NILES and ST. JOSEPH, INC.; LAKELAND MEDICAL PRACTICES; and INTERCARE COMMUNITY HEALTH NETWORK** undertook and had the duties of providing **AMANDA WILLIAMS** and **AIDEN WILLIAMS** with the necessary and proper facilities for the care and treatment of their condition, and to provide adequate safeguards for their health and welfare.

17. That Defendants, **LAKELAND REGIONAL HEALTH SYSTEM, a Domestic Nonprofit Corporation; LAKELAND REGIONAL MEDICAL CENTER, an assumed name of LAKELAND HOSPITAL at NILES and ST. JOSEPH, INC.; LAKELAND MEDICAL PRACTICES; and INTERCARE COMMUNITY HEALTH NETWORK** agreed to furnish **AMANDA WILLIAMS** and **AIDEN WILLIAMS** with the services of competent, qualified, and licensed staff of physicians, surgeons, residents, technicians, interns, nurses, and other employees to properly diagnose conditions and to render competent advice, treatment and assistance in accordance with the standards of the community.

18. That at all times pertinent hereto, Defendants, **LAKELAND REGIONAL HEALTH SYSTEM, a Domestic Nonprofit Corporation; LAKELAND REGIONAL**

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

**MEDICAL CENTER, an assumed name of LAKELAND HOSPITAL at NILES and ST. JOSEPH, INC.; LAKELAND MEDICAL PRACTICES; and INTERCARE COMMUNITY HEALTH NETWORK** by and through their duly authorized agents, servants, and/or employees, had the duty to provide **AMANDA WILLIAMS** as Next Friend of **AIDEN WILLIAMS** and Plaintiff **AIDEN WILLIAMS** with the services of a competent, qualified, and licensed staff of physicians, surgeons, technicians, residents, interns, nurses, and other employees to properly diagnose their condition, to render competent advice and assistance in the care and treatment of their case, and to render same in accordance with the standards then prevailing throughout the nation.

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

19. That Defendants, **LAKELAND REGIONAL HEALTH SYSTEM, a Domestic Nonprofit Corporation; LAKELAND REGIONAL MEDICAL CENTER, an assumed name of LAKELAND HOSPITAL at NILES and ST. JOSEPH, INC.; LAKELAND MEDICAL PRACTICES; and INTERCARE COMMUNITY HEALTH NETWORK** are responsible for the operation of the hospitals, the selection of their medical staff, and for the quality of care and record keeping rendered at said hospitals, pursuant to MCLA 333.20141, MCLA 333.21513, and MCL 333.20175.

20. That at all times pertinent hereto, Defendants, **LAKELAND REGIONAL HEALTH SYSTEM, a Domestic Nonprofit Corporation; LAKELAND REGIONAL MEDICAL CENTER, an assumed name of LAKELAND HOSPITAL at NILES and ST. JOSEPH, INC.; LAKELAND MEDICAL PRACTICES; and INTERCARE COMMUNITY HEALTH NETWORK,** were possessed, pursuant to MCLA 333.20141 and MCLA 333.21513, by and through their administrative and supervisory staffs, with the right, duty and power to make determinations with respect to any given physician so

as to whether said physician should be granted staff privileges and, if said privileges were to be granted, the nature of such privileges, the nature of any required supervision, and the time period for which said supervision would be required.

21. **AMANDA WILLIAMS**, individually, and as Next Friend of **AIDEN WILLIAMS**, and Plaintiff **AIDEN WILLIAMS** contracted and consulted with Defendants for medical treatment and care, and had been treating with the aforementioned Defendants at all times relevant hereto.

22. Amanda Williams was a 23-year-old, African American, G1P0. At the time this pregnancy began, her obstetrical history was significant for morbid obesity, vaginal and urinary tract infections.

**REITER & WALSH, P.C.**
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

23. Ms. Williams presented to the emergency department at Lakeland Medical Center, St. Joseph on 09/01/14 with complaints of abdominal cramping and vaginal discharge. She had a positive UCG and culture for Gonorrhea. The Gonorrhea was treated with Rocephin. OB ultrasound was performed on 09/01/14 and findings were consistent with a gestation of 5 weeks and 6 days. The examining physician was concerned for an ectopic pregnancy. On 09/05/16 Ms. Williams was re-evaluated at InterCare Community Health in Benton Harbor, and ectopic pregnancy was ruled out.

24. On 09/11/14, another OB ultrasound performed at InterCare revealed a single live intrauterine pregnancy, 7 weeks 3 days and a diminishing right par ovarian cyst.

25. Ms. Williams' prenatal care was initiated on 10/08/14, at InterCare Community Health Network in Benton Harbor. She had subsequent prenatal visits on

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

10/22/14, 11/19/14, 12/17/14, 01/14/15, 02/04/15, 02/18/15, 03/04/15, 03/18/15, 03/31/15, 04/08/15, 04/15/15, and 04/22/15. Her prenatal screenings were unremarkable.

26. Ms. Williams had visits to Lakeland Medical Center for triage and/or ultrasounds on 12/02/14 and 12/10/14. On 12/02/14 she was diagnosed with a UTI and prescribed Keflex at Lakeland Regional Medical Center Emergency Department. On 12/10/14 an ultrasound at Lakeland Medical Center recorded an EDC of 04/23/15.

27. On 02/26/15, Ms. Williams presented to Lakeland Medical Center with complaints of cramping and vaginal discharge. Fetal heart tracing was described as a Category I. Lab testing was negative.

28. On 03/11/15, an obstetrical ultrasound at Lakeland Medical Center demonstrated borderline oligohydramnios. EDC was recorded as 04/21/15. A follow up ultrasound on 04/07/15 showed adequate fluid, and an EDC of 04/30/15.

29. On 04/20/15, at 38 weeks 5 days, Ms. Williams presented to triage at Lakeland Medical Center for complaints of right sided pain, burning and frequent urination, and thick white vaginal discharge. She also complained of decreased fetal movement, recent elevated blood pressures, diarrhea, and some blood noticed after bowel movements. The fetal monitor indicated the presence of contractions. Fetal movement was positive. Fetal heart tracing was characterized as a Category 1. Ms. Williams was seen by nursing staff. Tracy Anderson, CNM, was consulted via phone. Ms. Williams was discharged home with diagnoses of false labor, threatened labor, and decreased fetal movement.

30. At 39 weeks 2 days, on 04/24/15 at 13:26, Ms. Williams was evaluated at Lakeland Medical Center triage for complaints of vaginal bleeding and contractions.

Fetal movement was recorded as positive. Vaginal spotting was documented. Tracy Anderson, CNM reviewed the fetal monitor strip. At 17:09, fetal monitoring was documented to be nonreactive, and a BPP was performed, with a result of 8. Dilation is recorded as closed, dimple. Fetal station was recorded as -1 -1/-2. Vaginal spotting was recorded. Contraction frequency 5-6, lasting 50-60 secs. Ms. Williams was discharged home at 17:30, with diagnoses of bleeding/uterine or vaginal, and unspecified antepartum hemorrhage.

31. On 04/26/15, at 39 weeks 4 days gestation, Ms. Williams began contracting at 03:00. She called Lakeland Medical Center and spoke with a nurse regarding complaints of contractions, and informed that she was seen at the facility on 4/24 for spotting. Haley Sullivan, RN informed Ms. Williams to "*take a warm bath or shower to help with contraction pain...*" Ms. Williams was "*Encouraged to call or come in to be evaluated if contractions worsen or if she is concerned about herself or her baby.*"

32. Ms. Williams presented to triage in labor at 10:02 on 04/26/15. Urinalysis dipstick was performed at 10:15 and was positive for trace Leukocytes. This was the only lab testing done. Her baseline BP was 133/82 mm Hg. Initial assessment by Tracy Anderson, CNM, was performed around 12:30. The provider noted FHR category I and vaginal examination results of 5cm/100%/0. Fluids and oxygen were administered. Ms. Williams was admitted for worsening contractions since yesterday. Obstetrical history was significant for obesity.

33. Amanda was accompanied by her mother, Venise Williams, her younger sister, Tina Williams, her aunt, Helen Williams, and her best friend, Alexis Ray.

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

34. Amanda had elevated BP recorded throughout her labor. The greatest systolic measurement was 172. The greatest diastolic measurement was 105.

35. Amanda received a labor epidural at 13:19. As the hours progressed, fetal monitoring revealed early and variable decelerations. Following the epidural, Amanda experienced numbness on her left side

36. At 17:40 the nurse, Carmen Escotto, documented late and prolonged FHR decelerations. At 18:22 SROM occurred with thin meconium stained fluid noted. Ms. Escotto performed a vaginal examination and noted 7 cm/100/+1 as well as fetal head caput. The nurse requested a bedside evaluation.

37. At around this time, Amanda's mother, Venise Williams, went to CNM Tracy Anderson on more than one occasion asking her to perform a C-Section because the baby's heart rate kept dropping and she was very concerned about the well-being of the baby. CNM Anderson refused to consider or offer a C-Section.

38. CNM Anderson performed a bedside evaluation at 18:40. AROM of a forebag was performed at 18:45. Positon was noted to be vertex with caput.

39. Anderson consulted with Dr. Bard via telephone around 18:57. Her assessment included a FHR Category II with suspicion for umbilical cord malposition. She documented "*Decelerations present variable in nature she has consistently had these since about 1 pm.*" CNM Anderson ordered an amnioinfusion and 1000 mg Ofirmev. The amnioinfusion was given at 19:08, and Ofirmev at 19:14.

40. At 19:25, Ms. Williams BP was 170-97, and noted to be extremely anxious. Variable decelerations are documented. At 19:35, FHR baseline was indeterminate, and variability marked.

41. At 19:40, CNM Anderson performed a vaginal exam and noted 8 cm/100/+2 station.

42. At 20:13, CNM Anderson consulted and updated Dr. Bard. She documented that all variable and early decelerations resolved with amnioinfusion and that the FHR tracing was reassuring. She documented that Dr. Bard was aware of previous FHR tracing.

43. CNM Anderson performed a vaginal examination at 22:00 and noted 9+ cm/100.

44. Ms. Williams was reported to have an urge to push at 23:02. Evelyn Osei, RN, documented complete dilation with a +2 fetal station at 23:05.

45. At 23:39, CNM Anderson wrote a note detailing no maternal urge to push. Tracing was still described as Category II. She documented that Ms. Williams would be allowed to labor down until urge to push felt.

46. On 4/27/15, at 01:00 the nurse noted that Ms. Williams was pushing with contractions and requested the provider attend delivery. CNM Anderson was at the bedside at 01:12.

47. Delivery of Aiden Williams occurred at 01:21.

48. CNM Anderson reported a tight nuchal cord which required her to "*untangle through feet and around arms.*" The neonate was noted to be non-vigorous, with significant head molding.

49. Records indicate that CNM Anderson the midwife did not allow the two respiratory therapists to suction prior to positive pressure ventilation (PPV). CNM

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

Anderson was noted to have started PPV. CNM Anderson noted that she "*Did not use the neo puff as I have never been trained on the use of this device.*"

50. According to a note written by Dawn Burton, RRT at 04:55: Called to L&D room 3 for meconium baby. **Baby delivered 1:21 am and brought over to OHIO at 1:22. Was ready with meconium aspirator and laryngoscope but CNM grabbed PPV, before CNM started asked if we could suction first** and was directed that we were to start PPV **CNM started PPV, baby had no respiratory effort**, PPV with Neopuff at 12/5 and 21% **had to increase to 60% due to pt only at 74%, other respiratory therapist Tried to suction twice and got nothing but suction was not on so RN turned it on.** Other respiratory therapist suctioned once again with 2cc of tan thick secretions through Delee. Once SPO2 and respiratory effort was present and or increasing CNM instructed to do blow by. Did blow by of 60% and decreased down to 40% due to pt sats being 99%. **CNM then took baby over to mother bedside before we transfer baby back to the nursery.** Baby then placed under 40% oxygen hood.

51. According to Stacey Linn, RN the baby was limp, cyanotic with no respiratory effort and SpO2 was 66% at 1:22. Pulse was 80. The baby was said to be gasping at 1:24 with acrocyanosis. He remained limp. At 1:25 the color remained acrocyanotic. Spo2 was only 79%, pulse 100. At 1:26 it was documented that the baby was attempting to breath around PPV. The SpO2 improved to 92% at 1:27 and the Bag/Mask was discontinued. Pulse was 150. At 1:28, respiratory rate was 80, pulse 166 and color remained acrocyanotic. At this time, the RTs attempted to Delee suction x 2. Suction was not turned on. Suctioned was turned on by RN and mouth and through suctioned 2 cc of tan thick secretions. At 1:30, no respiratory effort was seen and PPV

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5103

was restarted. It was said that the respiratory effort renewed and PPV discontinued. Blowby was initiated. At 1:34 SpO2 was 90% but the color continued to be acrocyanotic. Pulse was 180. The baby remained acrocyanotic at 1:39 with a pulse of 176 and SpO2 of 96%. The baby was transferred to the ICN at 1:41. The last respiratory rate documented before transfer to the ICN was 100 @ 1:36.

52. Apgars were recorded as 2, 6, and 8. Although the Delivery Summary states that cord gas specimens were obtained, no report of the results was provided to Aiden's counsel.

53. Placental pathology revealed meconium staining, umbilical cord with overcoiling, acute chorioamnionitis (stage 2 grade 1), acute chrionic vasculitis (stage 2 grade 1), patchy lymphoplasmacytic chronic deciduitis, and small peripheral placental infarcts. The acute maternal and fetal inflammation was noted to be "*consistent with response to an ascending infection.*" In addition, the umbilical cord showed overcoiling, noting "*this is also an association with acute chorioamnionitis.*"

54. Upon arrival to the nursery Aiden was receiving CPAP for respiratory support.

55. Dr. Hurst-Anderson was notified of the delivery at 2:30. At 03:50 the first nursing assessment documented that Aiden Williams, had caput, molding, and overriding cranial sutures. He was also noted to have nasal flaring and was tachypneic (RR94)

56. A blood culture was drawn at 10:54, which ultimately proved negative. There was an episode of decreased pulse ox at 11:29 which was not responsive to stimulation.

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

57. Throughout the day, Aiden had apneic and desaturation events. At 16:00 NC was discontinued and oxyhood was applied. At 16:04, the pulse ox dropped to 58%. The baby was pale with shallow respirations. Oxyhood was maintained at 30.1%.

58. According to the assessment by Dr. Hurst-Anderson at 17:12, the baby had significant head molding. The active problems included meconium aspiration, hypoxia and tachypnea.

59. Aiden was noted to have apnea around 18:20 and PPV was begun. A CBC at this time, showed a high C-reactive protein of 4.2. At 18:46, the baby's pulse ox dropped to 61% and did not respond to tactile stimulation. The color was pale and PPV started again. Stat Chest x-rays were taken about 19:00 for meconium aspiration. At 19:10 blood was drawn for a capillary blood gas which revealed the following:

| | | |
|---|---|---|
| pH | 7.27 (*L*) | (7.35-7.45) |
| pCO2 | 41 | (35-45) |
| **pO2** | **34** (*LL*) | (40-70) |
| HCO3 | 18.8 (*L*) | (22.0-26.0) |
| Base Deficit | 7.7 (*H*) | (0-2.0) |
| **O2 sat** | **56%** (*LL*) | (70-90%) |

The results were reported to Dr. Hurst-Anderson 1915.

60. At 19:34, pediatrician, Dr. Desire Hurst-Anderson was at the bedside. At 19:39, the baby had no voluntary respirations. SpO2 was 69%. At 19:53, Dr. Hurst-

Anderson, attempted intubation twice. Both attempts failed. Dr. Hurst-Anderson documented 3 attempts at intubation. Capillary blood gas results were performed.

61. The nurse noted apnea with eye movements around 20:27. Dr. Hurst-Anderson documented tongue thrusting, eye deviation and shaking of arms and legs at this time.

62. Another apneic episode occurred at 21:12, and CPAP switched to PPV, pulse ox dropped to 65%. Another capillary blood gas was performed.

63. At 21:19 another apnea episode started, CPAP was switched to PPV and pulse ox dropped to 59%. Seizure was noted to start at 21:20, with twitching of the arms and legs. Aiden continued to have apneic episodes at 21:31 and 21:41.

64. At 21:43, Dr. Hurst-Anderson spoke with the Bronson Transport Team, and documented their estimated time of arrival as 20-25 minutes.

65. Phenobarbital was administered at 21:47. Aiden had another apnea at 21:49.

66. Lakeland Medical Center records documented that Aiden was being transferred to the Bronson NICU *"for severe complications."* Dr. Hurst-Anderson documented that Aiden's neuro exam was abnormal at the time of discharge.

67. The Bronson team arrived at 22:14 and Aiden was transferred from Lakeland Medical Center to the Bronson Hospital NICU.

68. Aiden had repeated seizure activity upon admission at Bronson. A video EEG was initiated on 4/27/15 at 08:00. Abnormal findings included 55 electrographic seizures. "*Seizure onset is multifocal involving independently the right temporal, central midline and left central temporal regions*." Aiden's C-Reactive Protein was noted to be elevated.

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

69. An MRI was performed on 05/02/15, at 5 days of age. Findings included, "*evidence of extensive anoxic ischemic changes with the bilateral temporal parietal and occipital diffusion restriction and diffusion restriction to the bulk of the frontal lobes above the level of the insula. There is some inferior frontal lobe sparing and basal forebrain and basal ganglia sparing with relative preservation of the posterior fossa including the brain stem and cerebellum…There is a small scalp vertex fluid collection…No findings of intracranial hemorrhage*." The impression was extensive anoxic ischemic change throughout the majority of the cerebral cortex and underlying structures with relative basal ganglia and posterior fossa sparing and interior frontal sparing.

70. On May 2, 2015, the neurologist consulted on Aiden informed his mother that the child will never be normal with, "*at least some degree of cognitive limitation (potentially severe), as well as movement issues.*" According to Dr. Pierucci, Aiden's mother, "*immediately understood and broke down in tears repeating that she had no idea how she could take care of her baby. She is appropriately angry and hurt, as well as young and pretty much alone. Case management has been paged; she did not want to speak with a chaplain.* ***I have notified risk management*** *about the findings on the MRI, the hospital course here at Bronson, and the birth history at St. Joe.*"

71. Aiden was discharged from the Bronson NICU on 05/22/15. The following were the discharge diagnosis:

| | |
|---|---|
| **Encephalopathy** | **04/28/15 to 05/05/15** |
| Suspected Seizures | 04/28/15 |
| EEG | 04/28/15 |

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

| | |
|---|---|
| | 05/07/15 |
| Phenobarbital | 04/28/15 to 05/19/15 |
| **Seizures** | **04/29/15 to 05/22/15** |
| Neurology Consult | 04/29/15 |
| Dilantin | 04/29/15 |
| Keppra | 04/29/15 to 05/22/15 |
| Brain MRI | 05/02/15 |
| **HIE** | **05/06/15 to 05/22/15** |

72. At InterCare, the working diagnoses for Aiden have included Hypertonicity and Neonatal Encephalopathy. He has continued to receive anticonvulsant medication to manage his seizure activity.

73. Aiden Williams suffered from delayed delivery, decreased perfusion and/or oxygenation causing hypoxia, ischemia, asphyxia, cellular and tissue damage probably arising before delivery and continuing after birth for several hours, resulting in developmental delays, brain damage, cerebral palsy, seizure disorder and sepsis. Aiden Williams was diagnosed with hypoxic ischemic injury, neonatal encephalopathy, seizures, respiratory distress, neonatal sepsis, developmental delays, hypertonicity, and acquired microcephaly.

74. That Defendants, **TRACY M. ANDERSON, C.N.M. and MELISSA HOLDERREAD, C.N.M., as agents of LAKELAND REGIONAL HEALTH SYSTEM, a Domestic Nonprofit Corporation; LAKELAND REGIONAL MEDICAL CENTER, an assumed name of LAKELAND HOSPITAL at NILES and ST. JOSEPH, INC.; LAKELAND MEDICAL PRACTICES; and INTERCARE**

**COMMUNITY HEALTH NETWORK,** individually and through their duly authorized agents, servants and/or employees, and in disregard of their duties and obligations to **AMANDA WILLIAMS** as Next Friend of **AIDEN WILLIAMS** and Plaintiff **AIDEN WILLIAMS** and at variance to the standard of the community, were guilty of negligence and malpractice in the following particulars:

a. timely and appropriately perform interventions to avoid infection during the prenatal period in the presence of protein in the urine, pain and burning with urinating, and a thick, white discharge;
b. recognize patient as high risk obstetrical patient in the presence of obesity, elevated blood pressure, and a history of oligohydramnios;
c. failure to co-manage a high-risk patient with an obstetrician and pediatrician/neonatologist;
d. timely and appropriately recognize and act on hypotension and hypertension;
e. timely and appropriately act to avoid meconium aspiration;
f. timely advocate for a bedside examine of the patient by a doctor at 18:22;
g. timely and appropriately recognize and act on fetal heart rate patterns, which including decreased variability, repetitive decelerations, prolonged decelerations, and excessive uterine contractions;
h. appropriately assess, evaluate, monitor and perform a timely delivery;
i. timely and appropriately recognize and act on the failure to progress during labor;
j. timely advocate for a C-section by 18:30 on 4/27/15;
k. Assure that a timely C-section is performed;
l. monitor, supervise and manage nurses, CNMs, and other medical and technical personnel;
m. appropriately communicate/consult with health care personnel including but not limited to an obstetrician and/or maternal fetal medicine doctor;
n. appropriately utilize the chain of command;
o. appropriately function as a team;
p. timely and appropriately provide care so as to avoid prolonged labor and thus reduce, eliminate, and/or avoid excessive fetal head compression, scalp molding and/or caput;
q. avoid a traumatic delivery;
r. avoid perinatal hypoxia, ischemia and encephalopathy;
s. advocate for a pediatric/neonatal doctor to be present at delivery;
t. advocate for a medical provider certified in intubation to be present at delivery;
u. appropriately report to neonatal/pediatric care providers patient's medical history including the presence of meconium stained fluid and abnormal fetal heart rate patterns;
v. timely and appropriately suction before administering positive pressure;

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

w. timely and appropriately intubate and ventilate so as to properly oxygenate and resuscitate;
x. timely and appropriately perform testing, including but not limited to cord blood gases and glucose levels;
y. timely and appropriately transfer handling of the resuscitation and newborn care to anesthesia/newborn nurses/pediatricians and/or RT after birth;
z. Order and/or perform Proper GC, Blood and Urine Cultures to detect and so treat any infections which may threatened the well-being of the baby and mother, including but not limited to Beta Strep infections;
aa. Timely and appropriately recognize, diagnose, manage and treat genitourinary infection so as to prevent or avert an ascending infection and resulting intrauterine infection;
bb. To accurately assess and document Apgar Scores;
cc. Perform appropriate testing to diagnose and treat infection, including but not limited to blood and urine cultures, wet mount, CBCs, and any other testing to detect infection;
dd. To detect and treat infectious process which may threatened the mother and baby with appropriate antibiotics;
ee. To obtain complete relevant medical history and complaints and perform a careful and complete physical examination;
ff. To appropriately interpret electronic fetal monitor strips so as to detect problems with oxygenation in the baby and/or dysfunction in the labor pattern which may adversely affect oxygenation;
gg. To consult with an OBGYN and to insist that the physician come to examine the patient when there are irregularities in either the Fetal Heart Rate Pattern and/or contraction pattern;
hh. To initiate the chain of command when a physician will not respond and/or come to the hospital to evaluate their patient;
ii. To request the attendance of a pediatrician and/or neonatologist at the delivery when meconium is seen prior to the delivery;
jj. To permit appropriately trained staff to resuscitate the baby after delivery;
kk. To timely request the performance of a C-Section so as to avoid Hypoxia Ischemic insult to the baby in utero;
ll. To timely and appropriately obtain blood gases to assess the oxygenation status of the baby at the time of birth;
mm. To timely contact and transfer to a tertiary care center for appropriate medical care including but not limited to cooling therapy, appropriate respiratory support, and treatment of seizures;
nn. To perform resuscitation in accordance with the standard of care which includes conducting the resuscitation in a manner consistent with the Neonatal Resuscitation protocols;
oo. Timely and appropriately intubate the infant after delivery;
pp. Timely and appropriately assess, evaluate, monitor and perform a timely delivery; give appropriate informed consent, perform timely C-section; refrain from unnecessary delay in performing a timely delivery; timely recognize and act on



REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

non-reassuring fetal heart patterns; properly assess and document fetal heart monitor tracings; appropriately report and advise on fetal monitor strips; recognize and act on fetal monitor findings; appropriately manage nonreassuring fetal heart patterns;

qq. Appropriately manage nonreassuring fetal heart patterns, including but not limited to head compression;

rr. Appropriately supervise residents; appropriately communicate with health care personnel; appropriately utilize the chain of command; appropriately train and educate the nursing staff and staff physicians regarding recognition and management of nonreassuring fetal heart patterns; appropriately function as a team; appropriately assess, evaluate and manage elevated blood pressures, preeclampsia;

ss. Give proper discharge instructions;

tt. Provide appropriate informed consent; timely diagnose and act on maternal infection;

uu. Offer the patient the option of a C-Section;

vv. Properly train, supervise and manage nurses and other staff;

ww. Communicate between the health care providers including but not limited to L&D nurses, Dr. Bard, and/or other staff;

xx. Appropriately utilize the chain of command;

yy. Appropriate and timely monitor and perform a timely delivery;

zz. Maintain continuous electronic fetal monitoring in order to confirm and assure fetal well-being and to timely and appropriately recognize and act on non-reassuring fetal heart tone patterns;

aaa. Properly assess and document fetal heart monitor tracings;

bbb. Appropriately report and advise on fetal monitor strips;

ccc. Recognize and act on indeterminate fetal monitor patterns;

ddd. Timely and appropriately provide intrauterine resuscitation;

eee. Appropriately manage nonreassuring fetal heart tones and fetal status;

fff. Appropriately monitor maternal vital signs including but not limited to hypertension;

ggg. Avoid hypoxia, ischemia to the infant;

hhh. Avoid conditions causing or contributing to hypoxia, ischemia, metabolic acidosis, respiratory distress;

iii. To timely call for pediatrics to emergently attend delivery when the baby was born without respirations;

jjj. To request that pediatrics evaluate the baby emergently so as to establish a UAC/UVC for fluid support/resuscitation;

kkk. Timely and appropriate resuscitate;

lll. Obtain appropriate training concerning neonatal resuscitation;

mmm. Fully follow rules, guidelines, protocols, bylaws, forms, policies, procedures and/or other such items and/or the failure to promulgate same;

nnn. Recognize and/or notify concerning significant matters and/or adverse changes in the patient's condition;

ooo. Refrain from performing certain procedures when not fully trained;

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

ppp. Properly document pertinent information in the medical records including but not limited to vital signs, fetal heart tone and contraction patterns and/or cord gas results;

qqq. Avert any and all additional acts of negligence identified through additional discovery.

75. That Defendants, **JOHN L. BARD, M.D., as an agent of LAKELAND REGIONAL HEALTH SYSTEM, a Domestic Nonprofit Corporation; LAKELAND REGIONAL MEDICAL CENTER, an assumed name of LAKELAND HOSPITAL at NILES and ST. JOSEPH, INC.; LAKELAND MEDICAL PRACTICES; and INTERCARE COMMUNITY HEALTH NETWORK,** individually and through his duly authorized agents, servants and/or employees, and in disregard of his duties and obligations to **AMANDA WILLIAMS** as Next Friend of **AIDEN WILLIAMS** and Plaintiff **AIDEN WILLIAMS** and at variance to the standard of the community, was guilty of negligence and malpractice in the following particulars:

a. timely and appropriately perform interventions to avoid infection in the presence of protein in the urine, pain and burning with urinating, and a thick, white discharge;
b. recognize patient as high risk in the presence of obesity, elevated blood pressure, and a history of oligohydramnios;
c. failure to co-manage a nursing midwives high-risk patient;
d. timely and appropriately recognize and act on hypotension and hypertension;
e. timely and appropriately act to avoid meconium aspiration;
f. timely come to bedside to examine patient at 18:42 when notified by hospital staff of the patient's condition;
g. timely and appropriately recognize and act on fetal heart rate patterns, which including decreased variability, repetitive decelerations, prolonged decelerations, and excessive uterine contractions;
h. appropriately assess, evaluate, monitor and perform a timely delivery;
i. timely and appropriately recognize and act on the failure to progress during labor;
j. timely perform a C-section by 18:00 on 4/27/15;
k. monitor, supervise and manage nurses, CNMs, and other medical and technical personnel;

l. appropriately communicate/consult with health care personnel including but not limited to a nursing midwives and/or maternal fetal medicine doctor;
m. appropriately utilize the chain of command;
n. appropriately function as a team;
o. timely and appropriately act to avoid fetal head compression;
p. timely and appropriately act to avoid molding and caput of the fetal head;
q. avoid a traumatic delivery;
r. avoid perinatal hypoxia, ischemia and encephalopathy;
s. appropriately report to neonatal/pediatric care providers patient's medical history including the presence of meconium stained fluid and abnormal fetal heart rate patterns;
t. Order and/or perform Proper GC, Blood and Urine Cultures to detect and so treat any infections which may threatened the well-being of the baby and mother, including but not limited to Beta Strep infections;
u. To personally evaluate the patient and review the fetal heart monitor strips;
v. To accurately assess and document Apgar Scores;
w. Timely and appropriately recognize, diagnose, manage and treat genitourinary infection so as to prevent or avert an ascending infection and resulting intrauterine infection;
x. Perform appropriate testing to diagnose and treat infection, including but not limited to blood and urine cultures, wet mount, CBCs, and any other testing to detect infection;
y. To detect and treat infectious process which may threatened the mother and baby with appropriate antibiotics;
z. To obtain complete relevant medical history and complaints and perform a careful and complete physical examination;
aa. To appropriately interpret electronic fetal monitor strips so as to detect problems with oxygenation in the baby and/or dysfunction in the labor pattern which may adversely affect oxygenation;
bb. To come to examine the patient when there are irregularities in either the Fetal Heart Rate Pattern and/or contraction pattern;
cc. To request the attendance of a pediatrician and/or neonatologist at the delivery when meconium is seen prior to the delivery;
dd. To permit appropriately trained staff to resuscitate the baby after delivery;
ee. To timely request the performance of a C-Section so as to avoid Hypoxia Ischemic insult to the baby in utero;
ff. To timely and appropriately obtain blood gases so assess the oxygenation status of the baby at the time of birth;
gg. Timely and appropriately assess, evaluate, monitor and perform a timely delivery; give appropriate informed consent, perform timely C-section; refrain from unnecessary delay in performing a timely delivery; timely recognize and act on non-reassuring fetal heart patterns; properly assess and document fetal heart monitor tracings; appropriately report and advise

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

on fetal monitor strips; recognize and act on fetal monitor findings; appropriately manage nonreassuring fetal heart patterns;

hh. Appropriately manage nonreassuring fetal heart patterns, including but not limited to head compression

ii. Appropriately supervise midwives, residents; appropriately communicate with health care personnel; appropriately utilize the chain of command; appropriately train and educate the nursing staff and staff physicians regarding recognition and management of nonreassuring fetal heart patterns; appropriately function as a team; appropriately assess, evaluate and manage elevated blood pressures, preeclampsia;

jj. Give proper discharge instructions;

kk. Provide appropriate informed consent; timely diagnose and act on maternal infection;

ll. Offer the patient the option of a C-Section;

mm. Properly train, supervise and manage nurses and other staff;

nn. Communicate between the health care providers including but not limited to L&D nurses, the nurse midwives, and/or other staff;

oo. Appropriately utilize the chain of command;

pp. Appropriate and timely monitor and perform a timely delivery;

qq. Maintain continuous electronic fetal monitoring in order to confirm and assure fetal well-being and to timely and appropriately recognize and act on non-reassuring fetal heart tone patterns;

rr. Properly assess and document fetal heart monitor tracings;

ss. Appropriately report and advise on fetal monitor strips;

tt. Recognize and act on indeterminate fetal monitor patterns;

uu. Timely and appropriately provide intrauterine resuscitation;

vv. Appropriately manage nonreassuring fetal heart tones and fetal status;

ww. Appropriately monitor maternal vital signs including but not limited to hypertension;

xx. Avoid hypoxia, ischemia to the infant;

yy. Avoid conditions causing or contributing to hypoxia, ischemia, metabolic acidosis, respiratory distress;

zz. To timely call for pediatrics to emergently attend delivery when the baby was born without respirations;

aaa. To request that pediatrics evaluate the baby emergently so as to establish a UAC/UVC for fluid support/resuscitation;

bbb. Timely and appropriate resuscitate;

ccc. Fully follow rules, guidelines, protocols, bylaws, forms, policies, procedures and/or other such items and/or the failure to promulgate same;

ddd. Recognize and/or notify concerning significant matters and/or adverse changes in the patient's condition;

eee. Refrain from performing certain procedures when not fully trained;

fff. Properly document pertinent information in the medical records including but not limited to vital signs, fetal heart tone and contraction patterns and/or cord gas results;

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

ggg. Avert any and all additional acts of negligence identified through additional discovery.

76. That Defendants, **LABOR AND DELIVERY NURSES AT LAKELAND REGIONAL HEALTH SYSTEM, a Domestic Nonprofit Corporation; LAKELAND REGIONAL MEDICAL CENTER, an assumed name of LAKELAND HOSPITAL at NILES and ST. JOSEPH, INC.; LAKELAND MEDICAL PRACTICES; and INTERCARE COMMUNITY HEALTH NETWORK, including, but not limited to, HALEY SULLIVAN, R.N., CARMEN ESCOTTO, R.N., EVELYN OSEI, R.N., MARIA MCDONNELL, R.N., MARIKO MARTIN, R.N., and HANNAH LASOTA, R.N., as agents of LAKELAND REGIONAL HEALTH SYSTEM, a Domestic Nonprofit Corporation; LAKELAND REGIONAL MEDICAL CENTER, an assumed name of LAKELAND HOSPITAL at NILES and ST. JOSEPH, INC.; LAKELAND MEDICAL PRACTICES; and INTERCARE COMMUNITY HEALTH NETWORK,** individually and through their duly authorized agents, servants and/or employees, and in disregard of their duties and obligations to **AMANDA WILLIAMS** as Next Friend of **AIDEN WILLIAMS** and Plaintiff **AIDEN WILLIAMS** and at variance to the standard of the community, were guilty of negligence and malpractice in the following particulars:

a. timely and appropriately advocate for prenatal interventions to avoid infection in the presence of right sided pain, burning with urination, frequent urination and a thick, white vaginal discharge;
b. recognize the patient as high-risk in the presence of obesity, elevated blood pressures, and a history of borderline oligohydramnios;
c. promptly advocate for co-management of prenatal care with an obstetrician or maternal fetal medicine physician;
d. timely recognize and report maternal hypertension and periods of maternal hypotension;

**REITER & WALSH, P.C.**
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

e. advocate for medical treatment to avoid and correct maternal hypertension and episodes of maternal hypotension;
f. timely recognize recurrent variable decelerations, prolonged fetal heart rate decelerations and decreasing baseline variability;
g. timely implement intrauterine fetal resuscitation measures in response to recurrent and prolonged fetal heart rate decelerations, decreased baseline variability, repetitive decelerations and prolonged decelerations;
h. Timely implement interventions in response to excessive uterine activity that included tetanic contractions, inadequate resting time between contractions and an elevated uterine resting tonus;
i. timely and appropriately advocate for action to avoid fetal head compression;
j. promptly advocate for action to avoid ongoing molding and caput of the fetal head;
k. timely advocate for consultation and co-management of a high-risk laboring patient in the presence of obesity, elevated blood pressures, periods of hypotension, variable and prolonged fetal heart rate decelerations, decreased baseline variability and meconium-stained amniotic fluid;
l. avoid a traumatic delivery;
m. avoid perinatal hypoxia, ischemia and encephalopathy;
n. timely advocate for a cesarean delivery to be performed by 18:00 on 4/27/15;
o. appropriately and effectively function as a team;
p. appropriately communicate with obstetric and neonatal team members;
q. promptly invoke the chain of command;
r. timely advocate for action to avoid meconium aspiration;
s. timely report to neonatal/pediatric care providers the patient's medical history including the presence of meconium stained fluid and abnormal fetal heart rate patterns.
t. and timely request the presence at the delivery, a pediatrician / neonatologist or neonatal nurse practitioner skilled in neonatal resuscitation;
u. Order and/or perform Proper GC, Blood and Urine Cultures to detect and so treat any infections which may threatened the well-being of the baby and mother, including but not limited to Beta Strep infections;
v. To personally evaluate the patient and review the fetal heart monitor strips;
w. Timely and appropriately recognize, manage and treat genitourinary infection so as to prevent or avert an ascending infection and resulting intrauterine infection;
x. Perform appropriate testing to diagnose and treat infection, including but not limited to blood and urine cultures, wet mount, CBCs, and any other testing to detect infection;
y. To detect and treat infectious process which may threatened the mother and baby with appropriate antibiotics;
z. To obtain complete relevant medical history and complaints and perform a careful and complete physical examination;
aa. To appropriately interpret electronic fetal monitor strips so as to detect problems with oxygenation in the baby and/or dysfunction in the labor pattern which may adversely affect oxygenation;

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

bb. To consult with an OBGYN and/or CNM, and to insist that the physician come to examine the patient when there are irregularities in either the Fetal Heart Rate Pattern and/or contraction pattern;

cc. To initiate the chain of command when a CNM and/or physician will not respond and/or come to the hospital to evaluate their patient;

dd. To request the attendance of a pediatrician and/or neonatologist at the delivery when meconium is seen prior to the delivery;

ee. To permit appropriately trained staff to resuscitate the baby after delivery;

ff. To timely request the performance of a C-Section so as to avoid Hypoxia Ischemic insult to the baby in utero;

gg. To timely and appropriately obtain blood gases so assess the oxygenation status of the baby at the time of birth;

hh. To timely contact and transfer to a tertiary care center for appropriate medical care including but not limited to cooling therapy, appropriate respiratory support, and treatment of seizures;

ii. To perform resuscitation in accordance with the standard of care which includes conducting the resuscitation in a manner consistent with the Neonatal Resuscitation protocols;

jj. Timely and appropriately intubate the infant after delivery;

kk. Timely and appropriately assess, evaluate, monitor; refrain from unnecessary delay in performing a timely delivery; timely recognize and act on non-reassuring fetal heart patterns; properly assess and document fetal heart monitor tracings; appropriately report and advise on fetal monitor strips; recognize and act on fetal monitor findings; appropriately manage nonreassuring fetal heart patterns;

ll. Appropriately manage nonreassuring fetal heart patterns, including but not limited to head compression;

mm. Appropriately communicate with health care personnel; appropriately utilize the chain of command; appropriately train and educate the nursing staff and staff physicians regarding recognition and management of nonreassuring fetal heart patterns; appropriately function as a team; appropriately assess, evaluate and manage elevated blood pressures, preeclampsia;

nn. Give proper discharge instructions;

oo. Provide appropriate informed consent; timely diagnose and act on maternal infection;

pp. Offer the patient the option of a C-Section;

qq. Properly train, supervise and manage nurses and other staff;

rr. Communicate between the health care providers including but not limited to L&D nurses, the nurse midwives, and/or other staff;

ss. Appropriately utilize the chain of command;

tt. Appropriate and timely monitor and perform a timely delivery;

uu. Maintain continuous electronic fetal monitoring in order to confirm and assure fetal well-being and to timely and appropriately recognize and act on non-reassuring fetal heart tone patterns;

vv. Properly assess and document fetal heart monitor tracings;

ww. Appropriately report and advise on fetal monitor strips;

xx. Recognize and act on indeterminate fetal monitor patterns;
yy. Timely and appropriately provide intrauterine resuscitation;
zz. Appropriately manage nonreassuring fetal heart tones and fetal status;
aaa. Appropriately monitor maternal vital signs including but not limited to hypertension;
bbb. Avoid hypoxia, ischemia to the infant;
ccc. Avoid conditions causing or contributing to hypoxia, ischemia, metabolic acidosis, respiratory distress;
ddd. To timely call for pediatrics to emergently attend delivery when the baby was born without respirations;
eee. To request that pediatrics evaluate the baby emergently so as to establish a UAC/UVC for fluid support/resuscitation;
fff. Timely and appropriate resuscitate;
ggg. Obtain appropriate training concerning neonatal resuscitation;
hhh. Fully follow rules, guidelines, protocols, bylaws, forms, policies, procedures and/or other such items and/or the failure to promulgate same;
iii. Recognize and/or notify concerning significant matters and/or adverse changes in the patient's condition;
jjj. Refrain from performing certain procedures when not fully trained;
kkk. Properly document pertinent information in the medical records including but not limited to vital signs, fetal heart tone and contraction patterns and/or cord gas results;
lll. Avert any and all additional acts of negligence identified through additional discovery.

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

77. That Defendants, **NURSERY/SPECIAL CARE NURSERY NURSES AT LAKELAND REGIONAL HEALTH SYSTEM, a Domestic Nonprofit Corporation; LAKELAND REGIONAL MEDICAL CENTER, an assumed name of LAKELAND HOSPITAL at NILES and ST. JOSEPH, INC.; LAKELAND MEDICAL PRACTICES; and INTERCARE COMMUNITY HEALTH NETWORK, including, but not limited to, STACEY LIN, R.N., JENNIFER L. SOPER, R.N., GAIL KRAUSE, R.N., J. MARTINEZ, and JOHN W. GRITTER, R.N., as agents of LAKELAND REGIONAL HEALTH SYSTEM, a Domestic Nonprofit Corporation; LAKELAND REGIONAL MEDICAL CENTER, an assumed name of LAKELAND HOSPITAL at NILES and ST. JOSEPH, INC.;**

**LAKELAND MEDICAL PRACTICES; and INTERCARE COMMUNITY HEALTH NETWORK,** individually and through their duly authorized agents, servants and/or employees, and in disregard of their duties and obligations to **AMANDA WILLIAMS** as Next Friend of **AIDEN WILLIAMS** and Plaintiff **AIDEN WILLIAMS** and at variance to the standard of the community, were guilty of negligence and malpractice in the following particulars:

a. appropriately communicate with health care personnel;
b. appropriately utilize the chain of command;
c. appropriately function as a team;
d. assure all resuscitation equipment including suction is connected and functioning properly and turned on prior to delivery;
e. timely and appropriately assist with suctioning before administering positive pressure as required by the NRP and/or hospital protocols;
f. timely and appropriately assist with intubating;
g. advocate and assist for use of laryngoscope to visualize and suction prior to the initialization of ventilation in the presence of meconium;
h. assist with maintaining adequate pressure during ventilation;
i. timely and appropriately advocate for administration of glucose to avoid low blood sugar;
j. timely initiate, request, and/or advocate for performance of testing, including but not limited to cord blood gases, capillary gasses, chest x-rays, CBC cultures, ABG labs, and glucose levels;
k. timely and appropriately advocate for transfer to a tertiary care center/Neonatal Intensive Care Unit;
l. timely initiate, request, and/or advocate for placement of an IV at an earlier time;
m. advocate and utilize sufficient PIP/PEEP pressure to insure adequate ventilation and chest rises;
n. timely and appropriately initiate placement and maintenance of CPAP for tachypnea, nasal flaring, apnea, bradycardia, and desaturations;
o. timely and appropriately adequately suction secretions so as to assure and maintain a clear airway;
p. timely contact the doctor as ordered for problems with respirations/feeding;
q. timely and appropriately advocate for transfer to a hospital with a tertiary care center/Neonatal Intensive Care Unit;
r. timely recognize and/or appreciate the significance of claimant's condition;
s. timely contact doctor in the presence of abnormalities in vital signs;
t. advocate for a bedside examine of the patient by a doctor within one hour after birth 4/27/15 and at onset of apnea/respiratory destress;

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

u. advocate for and initiate intubation for purposes for ventilation at an earlier time and avert apnea, bradycardia, seizures, and brain damage.
v. To appropriately monitor the baby's vital signs including but not limited to pulse, respirations, blood pressure, pulse oximetry, color;
w. To timely recognize seizure activity;
x. To notify the pediatrician about the impending delivery once meconium was seen prenatally;
y. To timely obtain glucose levels;
z. To insist that the pediatrician emergently come into the hospital and evaluate the child once the depressed status of the baby was evident;
aa. To timely intubate and ventilate the child;
bb. To initiate fluid resuscitation;
cc. To review the cord gasses and to initiate therapy accordingly;
dd. To order and/or draw emergent blood gasses to assess oxygenation and base deficit status;
ee. To order and/or initiate transfer of the child to a tertiary care center after birth;
ff. To timely diagnose and treat a seizure disorders;
gg. To initiate venous and/or arterial access via a UVC and/or UAC after delivery;
hh. To obtain complete relevant medical history and complaints and perform a careful and complete physical examination;
ii. To initiate the chain of command when a physician will not respond and/or come to the hospital to evaluate their patient;
jj. To only permit appropriately trained staff to resuscitate the baby after delivery;
kk. To timely and appropriately obtain blood gases so assess the oxygenation status of the baby at the time of birth;
ll. To timely contact and transfer to a tertiary care center for appropriate medical care including but not limited to cooling therapy, appropriate respiratory support, and treatment of seizures;
mm. To perform resuscitation in accordance with the standard of care which includes conducting the resuscitation in a manner consistent with the Neonatal Resuscitation protocols;
nn. Timely and appropriately intubate the infant after delivery;
oo. Avoid hypoxia, ischemia to the infant;
pp. Avoid conditions causing or contributing to hypoxia, ischemia, metabolic acidosis, respiratory distress;
qq. To request that pediatrics evaluate the baby emergently so as to establish a UAC/UVC for fluid support/resuscitation;
rr. Obtain appropriate training concerning neonatal resuscitation;
ss. Fully follow rules, guidelines, protocols, bylaws, forms, policies, procedures and/or other such items and/or the failure to promulgate same;
tt. Recognize and/or notify concerning significant matters and/or adverse changes in the patient's condition;
uu. Refrain from performing certain procedures when not fully trained;

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5103

vv. Properly document pertinent information in the medical records including but not limited to vital signs, fetal heart tone and contraction patterns and/or cord gas results;

ww. Avert any and all additional acts of negligence identified through additional discovery.

78. That Defendants, **DAWN BURTON, R.R.T., JANNA RIDGEL, R.R.T., J. MARTINEZ and VICKY DIXON, R.R.T., as agents of LAKELAND REGIONAL HEALTH SYSTEM, a Domestic Nonprofit Corporation; LAKELAND REGIONAL MEDICAL CENTER, an assumed name of LAKELAND HOSPITAL at NILES and ST. JOSEPH, INC.; LAKELAND MEDICAL PRACTICES; and INTERCARE COMMUNITY HEALTH NETWORK,** individually and through their duly authorized agents, servants and/or employees, and in disregard of their duties and obligations to **AMANDA WILLIAMS** as Next Friend of **AIDEN WILLIAMS** and Plaintiff **AIDEN WILLIAMS** and at variance to the standard of the community, were guilty of negligence and malpractice in the following particulars:

a. appropriately communicate with health care personnel including but not limited to nurses and midwives caring for the newborn;
b. appropriately utilize the chain of command when appropriate care is not being provided;
c. assure that suctioning equipment is connected correctly and functioning properly prior to delivery;
d. appropriately function as a team in conjunction with nurses, midwives, and/or pediatrician;
e. timely and appropriately assist with suction before administering positive pressure as required by the NRP and/or hospital protocols;
f. timely and appropriately assist with intubating;
g. timely recognize and/or appreciate the significance of claimant's condition;
h. advocate for placement of an endotracheal tube prior to ventilation in the presence of meconium;
i. advocate for continued intubation and ventilation to avoid apneas, bradycardias, and seizures;
j. To promptly perform appropriate resuscitation measures on the baby after birth;
k. To timely suction, intubate and ventilate the child;
l. To initiate fluid resuscitation;

m. To review the cord gasses and to initiate therapy accordingly;
n. To order and/or draw emergent blood gasses to assess oxygenation and base deficit status;
o. Prevent untrained personnel from performing resuscitation;
p. Properly document pertinent information in the medical records including but not limited to vital signs, fetal heart tone and contraction patterns and/or cord gas results;
q. Avert any and all additional acts of negligence identified through.

79. That Defendants, **DESIRE M. HURST-ANDERSON, M.D., as an agent of LAKELAND REGIONAL HEALTH SYSTEM, a Domestic Nonprofit Corporation; LAKELAND REGIONAL MEDICAL CENTER, an assumed name of LAKELAND HOSPITAL at NILES and ST. JOSEPH, INC.; LAKELAND MEDICAL PRACTICES; and INTERCARE COMMUNITY HEALTH NETWORK,** individually and through her duly authorized agents, servants and/or employees, and in disregard of her duties and obligations to **AMANDA WILLIAMS** as Next Friend of **AIDEN WILLIAMS** and Plaintiff **AIDEN WILLIAMS** and at variance to the standard of the community, is guilty of negligence and malpractice in the following particulars:

a. appropriately communicate with health care personnel;
b. monitor, supervise and manage nurses and other medical and technical personnel;
c. appropriately function as a team;
d. timely and appropriately suction before administering positive pressure;
e. timely and appropriately intubate and ventilate so as to properly oxygenate and resuscitate;
f. timely and appropriately come to bed-side and exam patient;
g. timely and appropriately administer intravenous glucose to avoid low blood sugar;
h. timely and appropriately perform testing, including but not limited to cord blood gases and glucose levels;
i. timely and appropriately perform testing, including but not limited to arterial blood gases and glucose levels;
j. timely and appropriately transfer to tertiary care center/Neonatal Intensive Care Unit;
k. timely and appropriately refer to a Center that can assess the need for and can provide whole body cooling or Selective Head Cooling;

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

l. timely and appropriately transfer to Tertiary Care Center/Neonatal Intensive Care Unit that can assess the need for and can provide whole body cooling or Selective Head Cooling;
m. timely and appropriately transfer to a hospital with a Tertiary Care Center/Neonatal Intensive Care Unit;
n. timely recognize and/or appreciate the significance of claimant's condition;
o. appropriately monitor newborn to avoid abnormalities in vital signs;
p. avert apnea, bradycardia, seizures, and brain damage;
q. To promptly come into the hospital and evaluate the child once notified of the delivery;
r. To timely intubate and ventilate the child;
s. To initiate fluid resuscitation;
t. To timely obtain glucose levels;
u. To obtain timely blood cultures and to initiate prophylactic antibiotic therapy;
v. To review the cord blood gasses and to initiate therapy accordingly;
w. To order and/or draw emergent blood gasses to assess oxygenation and base deficit status;
x. To order and/or initiate transfer of the child to a tertiary care center after birth;
y. To timely diagnose and treat a seizure disorders;
z. To initiate venous and/or arterial access via a UVC and/or UAC after delivery;
aa. To obtain a complete blood count with white cell differential;
bb. Perform appropriate testing to diagnose and treat infection, including but not limited to blood and urine cultures, wet mount, CBCs, and any other testing to detect infection;
cc. To detect and treat infectious process which may threaten the baby with appropriate antibiotics;
dd. To obtain complete relevant medical history and complaints and perform a careful and complete physical examination;
ee. To timely and appropriately obtain blood gases so assess the oxygenation status of the baby at the time of birth;
ff. To timely contact and transfer to a tertiary care center for appropriate medical care including but not limited to cooling therapy, appropriate respiratory support, and treatment of seizures;
gg. To perform resuscitation in accordance with the standard of care which includes conducting the resuscitation in a manner consistent with the Neonatal Resuscitation protocols;
hh. Timely and appropriately intubate the infant after delivery;
ii. Appropriately supervise midwives, residents; nurses and Respiratory Therapy, and others, appropriately communicate with health care personnel; appropriately utilize the chain of command; appropriately train and educate the nursing staff and staff physicians regarding recognition and management of nonreassuring fetal heart patterns; appropriately function as a team; appropriately assess, evaluate and manage elevated blood pressures, preeclampsia;
jj. Properly train, supervise and manage nurses and other staff;

kk. Communicate between the health care providers including but not limited to L&D nurses, the nurse midwives, and/or other staff;
ll. Appropriately utilize the chain of command;
mm. Appropriately monitor maternal vital signs including but not limited to blood pressure, pulse, respirations, color and pulse oximetry;
nn. Avoid hypoxia, ischemia to the infant;
oo. Avoid conditions causing or contributing to hypoxia, ischemia, metabolic acidosis, respiratory distress;
pp. To emergently establish a UAC/UVC for fluid support/resuscitation;
qq. Timely and appropriate resuscitate;
rr. Obtain appropriate training concerning neonatal resuscitation;
ss. Fully follow rules, guidelines, protocols, bylaws, forms, policies, procedures and/or other such items and/or the failure to promulgate same;
tt. Recognize and/or notify concerning significant matters and/or adverse changes in the patient's condition;
uu. Refrain from performing certain procedures when not fully trained;
vv. Properly document pertinent information in the medical records including but not limited to vital signs, fetal heart tone and contraction patterns and/or cord gas results;
ww. Avert any and all additional acts of negligence identified through additional discovery.

80. That Defendants, **LAKELAND REGIONAL HEALTH SYSTEM, a Domestic Nonprofit Corporation; LAKELAND REGIONAL MEDICAL CENTER, an assumed name of LAKELAND HOSPITAL at NILES and ST. JOSEPH, INC.; LAKELAND MEDICAL PRACTICES; and INTERCARE COMMUNITY HEALTH NETWORK** individually and through their duly authorized agents, servants and/or employees, including but not limited to **TRACY M. ANDERSON, C.N.M., MELISSA HOLDERREAD, C.N.M., JOHN L. BARD, M.D., LABOR AND DELIVERY NURSES AT LAKELAND REGIONAL MEDICAL CENTER, including, but not limited to, HALEY SULLIVAN, R.N., CARMEN ESCOTTO, R.N., EVELYN OSEI, R.N., MARIA MCDONNELL, R.N., MARIKO MARTIN, R.N., and HANNAH LASOTA, R.N.; NURSERY/SPECIAL CARE NURSERY NURSES AT LAKELAND REGIONAL MEDICAL CENTER, including, but not**

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

**limited to, STACEY LIN, R.N., JENNIFER L. SOPER, R.N., GAIL KRAUSE, R.N., J. MARTINEZ, and JOHN W. GRITTER, R.N.; RESPITORY CARE TEAM AT LAKELAND REGIONAL MEDICAL CENTER, including, but not limited to, DAWN BURTON, R.R.T., JANNA RIDGEL, R.R.T., and VICKY DIXON, R.R.T., and DESIRE M. HURST-ANDERSON, M.D.**, and in disregard of their duties and obligations to **AMANDA WILLIAMS** as Next Friend of **AIDEN WILLIAMS** and Plaintiff **AIDEN WILLIAMS** and at variance to the standard of the community, were guilty of negligence and malpractice consistent with those items listed above in 74(a-qqq), 75(a-ggg), 76(a-lll), 77(a-ww), 78(a-q), 79(a-ww) and additionally in the following particulars:

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

a. To ensure that the staff was appropriately trained and certified, both as to matters relating to the care and treatment of pregnant and/or delivering mother, but also as it relates to the appropriate techniques for resuscitation of the newborn and mother;
b. To establish appropriate policies and procedures and guidelines to insure that CNMs caring for laboring and pregnant mothers are communicating and/or consulting regularly with a staff OB-GYN. And, when necessary, to call upon specialists who are not on staff with Intercare;
c. To establish appropriate policies and procedures and guidelines concerning the circumstances under which a CNM must request a formal consultation with an attending OBGYN;
d. To establish appropriate policies and procedures and guidelines concerning the detection and handling of infections in pregnant mothers;
e. To properly train health care personnel to appropriately utilize the chain of command; educate the nursing staff and staff physicians regarding recognition and management of nonreassuring fetal heart patters; appropriately function as a team; appropriately assess, evaluate and manage evaluate and manage elevated blood pressures, preeclampsia.

81. That Plaintiff sustained damages as a direct and proximate result of the Defendants' breaches as herein alleged. Plaintiff suffered delayed delivery, decreased perfusion and/or oxygenation causing hypoxia, ischemia, asphyxia, cellular and tissue

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

damage resulting in developmental delays, brain damage, cerebral palsy, seizure disorder, sepsis, hypoxic ischemic injury, neonatal encephalopathy, seizures, respiratory distress, neonatal sepsis, developmental delays, hypertonicity, and acquired microcephaly, including all damages cognizable under the Standard Jury Instructions and other laws of this state, and as hereinafter indicated.

82. That but for the Defendants' breaches as herein alleged, Plaintiff sustained damages as a direct and proximate result. Plaintiff suffered delayed delivery, decreased perfusion and/or oxygenation causing hypoxia, ischemia, asphyxia, cellular and tissue damage resulting in developmental delays, brain damage, cerebral palsy, seizure disorder, sepsis, hypoxic ischemic injury, neonatal encephalopathy, seizures, respiratory distress, neonatal sepsis, developmental delays, hypertonicity, and acquired microcephaly, including all damages cognizable under the Standard Jury Instructions and other laws of this state, and as hereinafter indicated.

83. That Plaintiff:

A. sustained severe bodily injuries which were painful, disabling and necessitated medical care, including delayed delivery, decreased perfusion and/or oxygenation causing hypoxia, ischemia, asphyxia, cellular and tissue damage resulting in developmental delays, brain damage, cerebral palsy, seizure disorder and sepsis. Aiden Williams was diagnosed with hypoxic ischemic injury, neonatal encephalopathy, seizures, respiratory distress, neonatal sepsis, developmental delays, hypertonicity, and acquired microcephaly;

B. suffered shock and emotional damage;

C. sustained possible aggravation of pre-existing conditions and/or reactivation of dormant conditions;

D. will be unable to attend to usual affairs including, but not limited to, household chores and personal needs, requiring life-long care up to and including full custodial care;

E. will be unable to render services including, but not limited to, household chores and personal needs;

F. will be unable to enjoy the normal pursuit of life;

G. suffered a loss in ability to earn money and will have impaired earning capacity in the future; and,

H. will have permanent pain, suffering, impairment and disabilities.

84. That Plaintiff was damaged by the loss of services, society, affection, advice, consortium and earnings, earnings capacity, and expended or became liable for various sums of money for securing medical supplies and attention for themselves and/or each other, all of which damages are continuing and permanent.

85. That Plaintiff did and/or will continue to incur expenses for hospitals, doctors, diagnostic tests, medical procedures, therapies, x-rays, medicines and other medical supplies and attention, as well as housing, care and service needs.

86. That the Defendants' negligence and/or malpractice may have aggravated, activated or precipitated a pre-existing condition and/or damages as alleged herein.

**WHEREFORE,** Plaintiff prays for a judgment against the Defendants in whatever amount above TWENTY-FIVE THOUSAND ($25,000.00) DOLLARS the Plaintiff is found to be entitled, together with interest, costs and attorney fees.

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

Respectfully submitted,

**REITER & WALSH, P.C.**

JESSE M. REITER (P40692)
EUEL W. KINSEY (P36690)
ELIZABETH M. SPIRIDON (P80715)
Attorneys for Plaintiff
122 Concord Road
Bloomfield Hills, MI 48304
(248) 593-5100

Dated: August 4, 2017

**REITER & WALSH, P.C.**
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

**JURY DEMAND**

Plaintiff hereby requests a trial by jury of the within cause.

Respectfully submitted,

**REITER & WALSH, P.C.**

JESSE M. REITER (P40692)
EUEL W. KINSEY (P36690)
ELIZABETH M. SPIRIDON (P80715)
Attorneys for Plaintiff
122 Concord Road
Bloomfield Hills, MI 48304
(248) 593-5100

Dated: August 4, 2017